UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

THOMAS G. PENICHTER,

                    Plaintiff(s)

    -against-

ANDREW SCHROEDER, THOMAS RICHARD
SCHROEDER JR., BEVERLY SCHROEDER
and MICHAEL WILLIAMS,

                    Defendant(s)

--------------------------------------------------------------------X

CIVIL ACTION

Case No.: 22-cv-03504

**COMPLAINT**

Plaintiff, Thomas G. Penichter (hereinafter "Plaintiff"), by and through his attorneys, CARTER REICH, PC, as and for his Complaint against Defendants, Andrew Schroeder ("Schroeder"), Thomas Richard Schroeder Jr. ("TRS"), Beverly Schroeder ("BS"), and Michael Williams ("Williams"), alleges as follows:

**NATURE OF THE CLAIMS**

1.     In this action, Plaintiff seeks compensatory and punitive damages against Schroeder as a result of his fraudulent inducement and breach of contract arising out of certain written and oral contracts (as hereinafter defined). Plaintiff also seeks compensatory and punitive damages against TRS, BS, and Williams, who aided and abetted Schroeder's fraud and breaches herein, while also promising to act as Schroeder's guarantors. Finally, Plaintiff seeks monetary damages against Defendants in the form of contractual attorneys' fees and expenses incurred in connection with the prosecution of this action.

2.      Plaintiff is the owner of the Condominium unit located at 2-17 51st Ave., Apt. 306, Long Island City, NY 11101 (hereafter the "Premises") and the sublessor of office space located at 215 Park Avenue South, New York, NY 10003 (hereafter the "Office").

3.      Defendants breached the terms and conditions of certain written and oral contracts by failing to pay one hundred sixteen thousand three hundred and forty two dollars and seventy six cents ($116,342.76) for the rental of the Premises and for failing to pay four thousand five hundred dollars ($4,500) for the rental of the Office.

4.      At all relevant times herein, Schroeder repeatedly promised Plaintiff that all monies due for the Premises and the Office rentals would be timely paid and that he had the financial means to honor his contractual obligations.

5.      These statements were knowingly false because Schroeder had no intention of paying the Premises or the Office; and, more importantly, because Schroeder did not have the financial means to pay.

6.      At all relevant times herein, defendants TRS and BS, acting through their agent Williams, promised and assured Plaintiff that they would act as guarantors for Schroeder and satisfy his contractual obligations to the Plaintiff.

7.      However, despite requesting and receiving Plaintiff's banking coordinates months ago, no payments have been made or received on Schroeder's behalf in furtherance of Schroeder's fraudulent behavior.

## **PARTIES**

8.      Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "7 "above, with the same force and effect as if fully set forth below.

9.      Plaintiff is an individual residing in the town of Gardiner, County of Ulster, State of New York.

2

10.     Upon information and belief, Schroeder is an individual residing at 7850 Communications Parkway, Apt. 1527, Plano TX 75024.

11.     Upon information and belief, TRS is an individual residing at 6206 Paradise Point Drive, Palmetto Bay, FL 33157.

12.     TRS is Schroeder's father.

13.     Upon information and belief, BS is an individual residing at 6206 Paradise Point Drive, Palmetto Bay, FL 33157.

14.     BS is Schroeder's mother.

15.     Upon information and belief, Williams is an individual residing in the State of Florida and employed by TRS and BS.

16.     At all relevant times herein, Williams acted as an agent for TRS and BS, who were disclosed principals.

## JURISDICTION AND VENUE

17.     Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "16" above, with the same force and effect as if fully set forth below.

18.     This Court has jurisdiction over Defendants pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

19.     Venue is appropriate in this Court under 28 U.S.C. §1332(a)(1) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE RELEVANT TERMS AND CONDITIONS
## OF THE WRITTEN CONTRACT FOR THE PREMISES

20.     Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "19 "above, with the same force and effect as if fully set forth below.

3

21.     Pursuant to the Standard Form of Condominium Apartment Lease for the Premises (the "Lease"), Schroeder had an absolute and unconditional obligation to pay to Plaintiff the rent due and owing thereunder, without any offset, abatement, or deduction whatsoever.

22.     Article 3 of the Lease provides: "[y]our monthly rent for the Apartment is $4,500.00. You must pay owner the rent, in advance, on the first day of each Month either to owner at the above address or at another place that the owner may inform you of by written notice."

23.     Article 9 of the Lease states:

you will take good care of the Apartment and will not permit or do any damage to it except for the damage which occurs through ordinary wear and tear. You will move out on or before the ending date of this Lease and leave the Apartment in good order and in the same condition as it was when you first occupied it, except for ordinary wear and tear and damage caused by fire or other casualty through no fault of your own.

When the Lease ends, you must remove all of your movable property. You must also remove at your own expense, any [furniture and installations] . . . or any other installation or attachment you may have installed in the Apartment, even if it was installed with the Owners consent. You must restore and repair to its original condition those portions of the Apartment affected by those installations and removals. You have not moved out until all persons, furniture, and other property of Yours is also out of the Apartment. If your property remains in the Apartment after the Lease ends, owner may either treat you as still in occupancy and charge you for use or may consider that you have given up the Apartment and any property remaining in the Apartment. In this event, owner may either discard the property or store it at Your expense. You agree to pay owner for all costs and expenses incurred in removing such property. The provisions of this article will continue to be in effect after the end of the Lease.

24.     Article 11(B) of the Lease states, "you will obey all of the Condominium Documents other than the provisions of the Condominium Documents required to be performed by Owner."

25.     Article 13 of the Lease states:

The Condominium will provide cold and hot water and heat, as required by law, repairs to the Apartment as required by the Condominium Documents, elevator service if the Condominium has elevator equipment, and utilities, if any, included in the rent, as set forth in subparagraph B.

The following utilities are included in the rent: Water

26.     Article 16(B) of the Lease states, "if you move out of the Apartment (abandonment) before the end of the Lease without the consent of the owner, this Lease will not be ended. You will remain responsible for each monthly payment of the rent as it becomes due until the end of the Lease. In case of abandonment, Your responsibilities for rent will end only if owner chooses to end the Lease for default as provided in Article 17."

27.     Article 17 of the Lease states:

you default under the Lease if you act in any of the following ways:

> (i)     you fail to carry out any agreement or provision of this Lease;
> (ii)    you, a permitted occupant of the Apartment, servants or people visiting the Apartment behave in an objectionable manner;
> (iii)   you, a permitted occupant of the Apartment, servants or people visiting the Apartment violate any of the condominium documents;
> (iv)    you do not take possession or move into the Apartment 15 days after beginning of the Lease; or
> (v)     you and the permitted occupants of the Apartment move out permanently before the Lease ends.

28.     Article 18 of the Lease states:

if this Lease is ended by owner because of your default, the following are the rights and obligations of you and owner.

> A.      You must pay your rent until this Lease has ended. Thereafter, you must pay an equal amount for what the law calls' use and occupancy' until you actually move out.
> B.      . . .
> C.      whether the Apartment is re rented or not, you must pay to owner as damages:
>
> > (i)     The difference between the rent in the Lease and the amount, if any, of the rents collected in any later lease of the Apartment for what would have been the remaining period of the Lease; and
> > (ii)    Owners expenses for the cost of putting the Apartment in good condition for rental; and
> > (iii)   Owners expenses for attorney's fees.

29.     Article 20 of the Lease states:

5

you must reimburse owner for any of the following fees and expenses incurred by owner:

(i)     make any repair to the Apartment or Condominium, including any appliances in the Apartment, which result from misuse or negligence by you, the permitted occupant of the Apartment, persons who visited the Apartment or work for you;

(ii)    . . .

(iii)   Preparing the Apartment for the next tenant if you move out of the Apartment before the lease ending date without owners prior written consent;

(iv)   any legal fees and disbursements for legal actions or proceedings brought by owner against you because of a default by you for defending lawsuits brought against owner because of actions of you, The permanent occupants of the Apartment, persons who visited the Apartment, or worked for you;

(v)    Removing all of your property after the Lease is ended;

(vi)   . . . ; and

(vii)  all other fees and expenses incurred by owner because of the failure to obey any other provisions and agreements of the Lease or the condominium documents by you, the permitted occupant of the Apartment, persons who visited the Apartment or work for you.

These fees and expenses shall be paid by you two owner as additional rent within 30 days after you receive owner's bill of statement. If the Lease has not ended when these fees expenses are incurred, you will still be liable to owner for the same amount of damages.

## **ADDITIONAL FACTS**

30.    Plaintiff repeat, reallege, and reiterate each and every allegation contained in paragraphs "1" through "29 "above, with the same force and effect as if fully set forth below.

31.    Plaintiff and Schroeder met socially in or around 2015.

32.    The two became friends and business associates and had at times worked together on various projects in the information technology industry, shared office space, and traveled together.

33.    On or about June 1, 2019, Schroeder approached Plaintiff about renting the Premises.

34.     Upon information and belief, on or about the same time Schroeder's employer closed its New York office and went virtual.

35.     Wanting to stay in the city, Schroeder offered to rent the Office.

36.     Prior to Schroeder's offer, Plaintiff did not plan on renewing his rental of the Office, but decided to do so in reliance on Schroeder's offer.

37.     On or about June 1, 2019, Plaintiff agreed to rent the Office to Schroeder for nine hundred dollars ($900.00) per month.

38.     On August 1, 2019, Plaintiff and Schroeder entered into the Lease by which Schroeder agreed to rent the Premises from Plaintiff for four thousand five hundred dollars ($4,500.00) per month.

39.     The term for the rental of the Premises was for one year, beginning on August 1, 2019, and continuing to August 1, 2020.

40.     Plaintiff also paid for Schroeder's electric and internet service, which fluctuated between approximately four hundred ($400/Month) to five hundred and fifty ($550/month) per month.

41.     Plaintiff's bookkeeper began contacting Schroeder regarding his debt beginning November 15, 2019, after he was four (4) months in arrears.

42.     Around the same time, Schroeder and Plaintiff began having weekly conversations focused on Schroeder's financial arrears.

43.     Schroeder explained that he was still recovering from a recent messy divorce, and he attributed his financial problems to his ex-wife's continued claims against certain stock grants and family money.

44.     During these calls, Schroeder also made representations regarding potential business opportunities that would be open to Plaintiff in exchange for his leniency with Schroeder's arrears.

45.     During these conversations, Schroeder also promised that his parents, TRS and BS, would pay any outstanding amount owed to Plaintiff, through the "Family Office".

46.     On or about January 3, 2020, Schroeder confirmed, in writing, that he had spoken to TRS and that Williams, on behalf of the "Family Office", would be paying the full amount due and owing.

47.     On or About February 7, 2020, Schroeder introduced Williams to Plaintiff's bookkeeper via email for purposes of making payment.

48.     On February 14, 2020, Williams requested that Plaintiff provide his ACH authorizations form or bank transfer information so that the Family Office could pay the outstanding arrears.

49.     Plaintiff provided his JP Morgan Chase banking information the same day, but payment was not made.

50.     On February 23, 2020, Plaintiff's bookkeeper again followed up with Schroeder and Williams about the payment.

51.     At or around this time, during one of Plaintiff and Schroeder's weekly calls regarding the arrears, Schroeder again represented that TRS and BS would cover the unpaid rent.

52.     Schroeder also claimed to have arranged an in-person meeting to be held in March of 2020 between TRS and Plaintiff so that TRS could bring Plaintiff in on business opportunities, in addition to paying back rent. This, of course, never happened.

53.     On March 2, 2020, Williams indicated to Plaintiff's bookkeeper that the Family Office was waiting to obtain approval from TRS and BS.

54.     On March 31, 2020, Plaintiff's bookkeeper reached out to TRS directly, informing him of Schroeder's continuing outstanding arrears.

55.     On July 24, 2020, Plaintiff attempted to serve Schroeder with an Affidavit of Confession of Judgment, which Schroeder had agreed to sign, at the Premises and his last known address but no response was received.

56.     On September 9, 2020, Plaintiff sent investigators to determine if Schroeder was still residing at the Premises.

57.     On October 16, 2020, Plaintiff served Schroeder with a Notice of Non-Renewal and Notice of Termination.

58.     On December 28, 2020, Plaintiff took possession and assessed the condition of the Premises.

59.     The Premises was left in extremely poor condition.

60.     There was a foul odor permeating the air.

61.     A thick sticky film covered the floor.

62.     Trash and debris littered the Premises, and there were giant balls of dog hair and dust throughout.

63.     Dog feces and dog urine were found behind the couch in the living room.

64.     Dirty clothes and trash were left piled up in the closets and the front office/bedroom.

65.     Cigarette butts and ashes were found littering the windowsill in the master bedroom.

66.     There was water damage throughout the Premises because the windows were left open, and rainwater had blown into the unit, causing water to pool on the windowsills and floors.

67.     The furniture that remained in the unit, that Schroeder had agreed to purchase but never did, was so damaged that it could not be salvaged.

68.     Plaintiff had to hire disposal and cleaning services to restore the condition of the Premises.

69.     Plaintiff had to hire a professional floor refurbisher and painter to repair the damage to the floors and walls caused by Schroeder.

70.     After he abandoned the Premises, but before Plaintiff took possession, a process server attempted to serve Schroeder at the Premises with a Summons and Complaint by his former landlord for unpaid rent totaling $46,536.02. See *23rd Chelsea Associates, LLC v. Andrew Schroeder*, NY Sup. Ct., Queens County (Index No.: 713614/2020).

71.     Had Plaintiff known that Schroeder owed his former landlord money for rent, Plaintiff never would have agreed to rent the Premises to Schroeder.

72.     Considering Schroeder was in arrears to his prior landlord totaling almost $50,000.00, the representations made by Schroeder to Plaintiff that he was able to rent the Premises and the Office were knowingly false.

73.     Schroeder made these false statements for the purpose of inducing Plaintiff into renting the Premises and the Office to him.

74.     In breach of Schroeder's obligations under the Lease, Schroeder has failed to pay Plaintiff the fixed monthly rent and utilities due and owing for the period covering August 2019 through December 2020, in the amount totaling eighty-five thousand dollars ($85,000.00)

10

75.     In breach of the Lease, Schroeder has failed to pay additional rents due and owing for disposal service in the amount of two thousand four hundred forty-nine dollars and Seventy-Seven Cents ($2,449.77).

76.     In breach of the Lease, Schroeder has failed to pay additional monies due and owing under for professional cleaning services in the amount of four hundred forty-nine dollars and thirteen cents ($499.13).

77.     In breach of the Lease, Schroeder has failed to pay additional monies due and owing for professional Floor services in the amount of five thousand eight hundred seventy nine dollars and twenty five cents ($5,879.25).

78.     In breach of the Lease, Schroeder has failed to pay additional monies due and owing for professional Painters in the amount of four thousand three hundred dollars ($4,300.00).

79.     In breach of Schroeder's obligations to rent the Office, Schroeder has failed to pay Plaintiff the fixed monthly rent due and owing for the period covering September 2019 to January 2020, in the amount totaling four thousand five hundred dollars ($4,500.00).

80.     In breach of their numerous oral and written promises to act as the financial guarantors for Schroeder and for aiding and abetting Schroeder's fraud, TRS, BS, and Williams are liable for all amounts due and owing to the Plaintiff herein.

81.     By reason of the foregoing, there is presently due to Plaintiff from Defendants the sum of at least one hundred twenty thousand eight hundred forty two dollars and seventy six cents ($120,842.76), plus accruing statutory interest on each missed payment, plus punitive and exemplary damages, costs, and reasonable attorney's fees as per the Lease.

## **FIRST CAUSE OF ACTION**
### **(Fraudulent Inducement As Against Schroeder)**

82.     Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "81" above, with the same force and effect as if fully set forth below.

83.     Prior to agreeing to rent the Premises and the Office, Schroeder made numerous representations to Plaintiff regarding his financial well being and ability to afford the Premises and the Office.

84.     Despite their friendship and professional relationship, prior to agreeing to rent the Premises and the Office, Schroeder never disclosed to Plaintiff that he had defaulted on his then current lease or that he owned his current landlord almost $50,000.

85.     Prior to agreeing to rent the Premises and the Office, Schroeder assured Plaintiff that his deteriorating marriage and divorce would not impair his ability to afford the Premises and the Office.

86.     These misrepresentations by Schroeder, as well as others, were of then present facts, collateral to the Lease and oral agreement to rent the Office, that served to induce Plaintiff into agreeing to rent the Premises and the Office to Schroeder.

87.     Given Schroeder's true financial condition at the time he agreed to rent the Premises and the Office, Schroeder's representations were knowingly false.

88.     Thereafter, Plaintiff and Schroeder began having almost weekly conversations from November 2019 to April 2020 regarding Schroeder's outstanding rent arrears.

89.     During these calls, Schroeder continued to make representations regarding his willingness and ability to pay; about his family's ability and willingness to pay; about his Family

Offices' willingness to pay; in addition to various "overseas investment opportunities" that would open to Plaintiff in exchange for his patience.

90.    Schroeder went beyond mere representations, going so far as setting up an in person meeting with his TRS in March of 2020 specifically to discuss payment of Schroeder's arrears, but this meeting never happened.

91.    Schroeder made these continuous misrepresentations, initially with the intent of inducing Plaintiff to rent the Premises and the Office; and, subsequently, to avoid eviction and collection proceedings while concealing his true intentions to never pay a dollar of rent.

92.    Plaintiff--who had an enduring friendship with Schroeder, was well aware of Schroeder's familial wealth, and personally observed his lavish lifestyle--justifiably relied on Schroeder's fraudulent statements to his extreme detriment.

93.    By reason of the foregoing, there is presently due to Plaintiff from Schroeder the sum of at least one hundred twenty thousand eight hundred forty two dollars and seventy six cents ($120,842.76), plus accruing statutory interest on each missed payment, plus exemplary and punitive damages, costs and reasonable attorney's fees.

## SECOND CAUSE OF ACTION
### (Breach of Contract As Against Schroeder)

94.    Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "93" above, with the same force and effect as if fully set forth below.

95.    A valid contract, *i.e.*, the Lease for the Premises, existed between Plaintiff and Schroeder.

96.    Plaintiff complied with its obligations under the terms of the Lease and has performed any and all conditions on its part to be performed, as required by the Lease.

97.     Schroeder has failed to comply with the terms and conditions of the Lease.

98.     Specifically, in breach of Defendant's obligations under Article 3 of the Lease for, Defendant has defaulted by failing to pay to Plaintiff rent and utilities for the period covering August 2019 through December 2020.

99.     In breach of the Lease, Schroeder has failed to pay additional monies due and owing for disposal service in the amount of two thousand four hundred forty nine dollars and seventy seven cents ($2,449.77).

100.    In breach of the Lease, Schroeder has failed to pay additional monies due and owing for professional cleaning services in the amount of four hundred forty nine dollars and thirteen cents ($499.13).

101.    In breach of the Lease, Schroeder has failed to pay additional monies due and owing for professional floor services in the amount of five thousand eight hundred seventy nine dollars and twenty five cents ($5,879.25).

102.    In breach of the Lease, Schroeder has failed to pay additional monies due and owing for professional painters in the amount of four thousand three hundred dollars ($4,300.00).

103.    By reason of the foregoing, there is presently due to Plaintiff from Schroeder the sum of at least one hundred sixteen thousand three hundred forty two dollars and seventy six cents ($116,342.76), plus accruing statutory interest on each missed payment, plus reasonable attorney's fees

104.    In addition, Plaintiff reserves the right to obtain a money judgment for damages for all rent due and owing under the Lease through and including the date of judgment.

**THIRD CAUSE OF ACTION**
**(Breach of Contract As Against Schroeder)**

105.   Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "104" above, with the same force and effect as if fully set forth below.

106.   A valid contract for the Office existed between Plaintiff and Defendant Schroeder.

107.   Plaintiff complied with its obligations under the terms of the contract and has performed any and all conditions on its part to be performed.

108.   Schroeder agreed to pay Nine Hundred Dollars per Month ($900.00/Month) for the Office.

109.   Schroeder has failed to comply with the terms and conditions of the contract by failing to pay rent for the Office for the period covering September 2019 to January 2020.

110.   In breach of Defendant's obligations under the contract for the Office, Schroeder has failed to pay Plaintiff rent due and owing in the amount totaling four thousand five hundred dollars ($4,500.00).

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment As Against Schroeder)**

111.   Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "110 "above, with the same force and effect as if fully set forth below.

112.   Schroeder agreed to rent the Premises and the Office.

113.   Schroeder's tenancy at the Plaintiff's Apartment lasted seventeen (17) months, and his rental of the Office lasted five (5) months.

114.   Schroeder garnered substantial benefits from the Premises and the Office.

115.   Schroeder has not paid a dime of the arrears owed for the Premises or the Office.

116.    Under principles of equity and good conscience, Schroeder should not be permitted to retain the benefits garnered without paying for them.

117.    By reason of the foregoing, there is presently due to Plaintiff from Schroeder the sum of at least one hundred twenty thousand eight hundred forty two dollars and seventy six cents ($120,842.76).

**FIFTH CAUSE OF ACTION**
**(Aiding and Abetting As Against TRS, BS, and Williams)**

118.    Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "117" above, with the same force and effect as if fully set forth below.

119.    Defendants TRS, BS, and Williams had actual knowledge of Schroeder's financial condition and inability to meet his contractual obligations.

120.    Defendants TRS, BS, and Williams had actual knowledge of Schroeder's contentious divorce as well as his ex-wife's claims against Schroeder's stock grants and bonus payments.

121.    Defendants TRS, BS, and Williams had actual knowledge that Schroeder was in substantial arrears to his prior landlord.

122.    Nevertheless, Defendants TRS, BS, and Williams each provided substantial assistance to Schroeder aiding and abetting his fraudulent inducement and breach of written and oral contracts as described herein.

123.    Defendants TRS, BS, and Williams provided substantial assistance by, among other things, repeatedly promising to act as guarantors for Schroeder when they had no intention of doing so; and, by promising Plaintiff overseas investment opportunities that they had no intention of delivering on.

16

124.    By reason of the foregoing, there is presently due to Plaintiff from Defendants the sum of at least one hundred twenty thousand eight hundred forty two dollars and seventy six cents ($120,842.76).

## SIXTH CAUSE OF ACTION
### (Breach of Contract As Against TRS, BS, and Williams)

125.    Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "124" above, with the same force and effect as if fully set forth below.

126.    As of November 15, 2019, Schroeder was four (4) months behind rent and utilities under the  Lease and he had not paid a dime for the Office.

127.    When pressed by Plaintiff to honor his contractual obligations, Schroeder confided that he had just finalized a contentious and messy divorce and attributed his financial arrears to his ex-wife's attempts to deplete his assets.

128.    Schroeder repeatedly promised Plaintiff that his parents, through the "Family Office," would be paying for any outstanding rents due.

129.    On or about January 3, 2020, Schroeder confirmed this promise via email, representing that he had spoken to Plaintiff and that Williams from the Family Office would be paying the unpaid rent.

130.    In furtherance of this promise, on or About February 7, 2020, Schroeder introduced Williams to Plaintiff's bookkeeper via email.

131.    On February 14, 2020, Williams requested in writing that Plaintiff provide his A.C.H. authorizations form or bank transfer information so that the Family Office could pay the outstanding arrears.

132.    Plaintiff provided his JP Morgan Chase banking information in writing the same day, but payment was not made.

133.    Defendants assumed Schroeder's contractual obligations for the Premises and the Office when Williams, acting as agent for disclosed principals TRS and BS,  promised to make Plaintiff whole, going so far as to  request Plaintiff's banking coordinates as if payment was imminent.

134.    By reason of the foregoing, there is presently due to Plaintiff from Defendants TRS, BS and Williams, the sum of at least one hundred twenty thousand eight hundred forty two dollars and seventy six cents ($120,842.76).

<u>**SEVENTH CAUSE OF ACTION**</u>
**(Contractual Attorneys' Fees)**

135.   Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "134" above, with the same force and effect as if fully set forth below.

136.   Pursuant to Article 18 of the Lease, Defendants are liable to Plaintiff for attorneys' fees and expenses incurred in connection with the prosecution of this action.

137.   Article 18 of the Lease states:

if this Lease is ended by owner because of your default, the following are the rights and obligations of you and owner.

D.      You must pay your rent until this Lease has ended. Thereafter, you must pay an equal amount for what the law calls' use and occupancy' until you actually move out.
E.      . . .
F.      whether the Apartment is re rented or not, you must pay to owner as damages:

(iv)   The difference between the rent in the Lease and the amount, if any, of the rents collected in any later lease of the Apartment for what would have been the remaining period of the Lease; and

18

(v)     Owners expenses for the cost of putting the Apartment in good condition for rental; and

(vi)    Owners expenses for attorney's fees.

138.   Plaintiff has commenced this action against Defendants in order to enforce his rights and remedies under the Lease, including, but not limited to, the right to receive and recover all amounts allowed thereunder.

139.   Plaintiff has incurred, and will continue to incur, expenses in the form of, *inter alia*, attorneys' fees, and expenses, all as a result of the Defendants' default of their payment obligations pursuant to the Lease, the precise sum of which will be determined at trial or earlier conclusion of this action.

140.   Defendants are liable for the Plaintiff's expenses and legal fees under the terms of the Lease.

141.   Accordingly, Plaintiff is entitled to judgment against Defendants for his attorneys' fees and expenses incurred in prosecuting this action, the precise sum of which will be determined at trial or earlier conclusion of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that the Court grant judgment against Defendant as follows:

(1) On The First Cause of Action, granting Plaintiff a money judgment against Schroeder, in the sum of least one hundred twenty thousand eight hundred forty two dollars and seventy six cents ($120,842.76), inclusive of accruing statutory interest on each missed payment, subject to Plaintiff's right to seek additional damages for rent due and owing

under the Lease through and including the date of judgment, plus exemplary and punitive damages, costs and reasonable attorney's fees;

(2) On The Second Cause of Action, granting Plaintiff a money judgment against Schroeder, in the sum of least one hundred sixteen thousand three hundred forty two dollars and seventy six cents ($116,342.76), inclusive of accruing statutory interest on each missed payment, subject to Plaintiff's right to seek additional damages for rent due and owing under the Lease through and including the date of judgment.

(3) On The Third Cause of Action, granting Plaintiff a money judgment against Schroeder, in the amount of four thousand five hundred dollars ($4,500.00).

(4) On The Fourth Cause of Action, granting Plaintiff a money judgment against Schroeder, in the sum of least one hundred twenty thousand eight hundred forty two dollars and seventy six cents ($120,842.76).

(5) On The Fifth Cause of Action, granting Plaintiff a money judgment against Defendants, TRS, BS, and Williams in the sum of least one hundred twenty thousand eight hundred forty two dollars and seventy six cents ($120,842.76).

(6) On The Sixth Cause of Action, granting Plaintiff a money judgment against Defendants, TRS, BS, and Williams, in the sum of least one hundred twenty thousand eight hundred forty two dollars and seventy six cents ($120,842.76).

(7) On the Seventh Cause of Action, granting Plaintiff a money judgment against Defendants for contractual attorneys' fees to be determined at trial or the earlier conclusion of this action; and

(8) That the Court grant Plaintiff such other, further, and different relief to which it may be entitled.

20

Dated: New York, New York
       June 14, 2022

Yours, etc.
CARTER REICH, PC


By:_ _____ __
Carter A. Reich, Esq.
246 Fifth Avenue, Suite 508
New York, New York 10001
(917) 615-0978
creich@reich.legal


**<u>Defendants Addresses</u>:**

Andrew Schroeder
7850 Communications Parkway, Apt. 1527
Plano TX 75024.

Thomas Richard Schroeder Jr.
6206 Paradise Point Drive,
Palmetto Bay, FL 33157

Beverly Schroeder
6206 Paradise Point Drive,
Palmetto Bay, FL 33157

Michael Williams
6206 Paradise Point Drive
Palmetto Bay, FL 33157