UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THOMAS G. PENICHTER,

                                             Plaintiff,

v.

ANDREW SCHROEDER, THOMAS RICHARD SCHROEDER JR., BEVERLY SCHROEDER MICHAEL WILLIAMS, RONALDO PEREZ, ABC CORPS 1-3, AND JOHN DOES 1-3,

                                             Defendants.

**MEMORANDUM AND ORDER**

22-CV-3504 (LDH) (PK)

---

LaSHANN DeARCY HALL, United States District Judge:

Thomas Penichter ("Plaintiff") brings the instant action against Andrew Schroeder, Thomas Schroeder, Beverly Schroeder, Michael Williams, Ronaldo Perez, ABC Corps. 1-3, and John Does 1-3 (collectively, "Defendants") asserting claims for fraudulent inducement, breach of contract, unjust enrichment, aiding and abetting fraud, and attorney's fees. (Am. Compl. ¶ 1, ECF No. 24.) Defendants Thomas Schroeder and Beverly Schroeder ("the Schroeders") move, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), to dismiss the First Amended Complaint ("FAC") against them.

## BACKGROUND[1]

Plaintiff owns a condominium in Long Island City, Queens (the "Condominium") and subleases an office space in Manhattan (the "Office"). (First Am. Compl. ("Am. Compl.") ¶ 2, ECF No. 24.) Plaintiff and Andrew Schroeder met in or around 2015. (*Id.* ¶¶ 46–47.) On or

---

[1] The following facts taken from the First Amended Complaint (ECF No. 24) are assumed to be true for the purposes of this memorandum and order.

1

around June 1, 2019, Andrew Schroeder approached Plaintiff about renting the Condominium and subleasing the Office.  (*Id.* ¶¶ 50, 52–54.)  That same day, Plaintiff agreed to rent the Office to Andrew Schroeder for $900 per month.  (*Id.* ¶ 54.)  On August 1, 2019, Plaintiff and Andrew Schroeder entered into a one-year lease agreement (the "Lease Agreement"), pursuant to which Andrew Schroeder agreed to rent the condominium at a rate of $4,500 per month.  (*Id.* ¶ 55.)  Plaintiff also paid for Andrew Schroeder's electric and internet services, which ranged in cost of approximately $400 to $550 per month.  (*Id.* ¶ 57.)

By November 15, 2019, Andrew Schroeder's rent was four months in arrears.  (*Id.* ¶ 58.)  Plaintiff spoke to Andrew Schroeder weekly concerning the late payments.  (*Id.* ¶ 59.)  During those discussions, Andrew Schroeder explained that he was "recovering from a recent messy divorce" and made representations to Plaintiff concerning potential business opportunities with the Schroeder family "in exchange for [Plaintiff's] leniency with Schroeder's arrears."  (*Id.* ¶¶ 60–61.)  Andrew Schroeder also promised that his parents, Defendants Beverly and Thomas Schroeder (the "Schroeders"), would pay any outstanding amount owed to Plaintiff through the "Home" or "Family Office."  (*Id.* ¶ 62.)

On December 19, 2019, Plaintiff's bookkeeper, Tabitha Castignoli, sent an email to Andrew Schroeder which stated, "Tom mentioned that you have someone at your family office that might assist in handling this for you ..."  (*Id.* ¶ 63.)  On January 3, 2020, Andrew Schroeder responded "… you're correct there is someone who will be handling this.  Mike Williams from our office will be in touch ASAP …" (*Id.*)  Thereafter, on February 5, 2020, Andrew Schroeder introduced Williams to Castignoli, via email.  (*Id.* ¶ 64.)  About one week later, Michael Williams sent an email to Castignoli requesting Plaintiff's banking information and introducing Ronaldo Perez.  (*Id.* ¶ 66.)  Plaintiff provided his banking information that same day.  (*Id.* ¶ 67.)

2

On February 23, 2020, Castignoli contacted Andrew Schroeder and Williams, seeking an update on the still outstanding arrears. (*Id.* ¶ 68.) In response, Andrew Schroeder again informed Plaintiff that the "Home" or "Family" would pay the debt. (*Id.* ¶ 69.) Andrew Schroeder also claimed to have arranged a meeting between his father and Plaintiff, during which they could discuss business opportunities for Plaintiff to assist in paying the overdue rent. (*Id.* ¶ 70.) On March 2, 2020, Williams emailed Plaintiff and Castignoli, stating: "My office has been waiting on a couple of approvals, the final of which is in Mr. Schroeder's side. I would respectfully request you delay your deadline until Wednesday EOD, if not-tomorrow EOD; as I have received these approvals over the weekend and it has made it difficult to process this payment today." (*Id.* ¶ 71.)

On March 31, 2020, Castignoli emailed Thomas Schroeder directly and informed him that he had not received any payment from "their office." (*Id.* ¶ 72.) Thomas Schroeder did not respond. (*Id.*) On July 24, 2020, Plaintiff attempted to serve Andrew Schroeder with an "Affidavit of Confession of Judgment" at the Condominium and Andrew Schroeder's last known address. (*Id.* ¶ 73.) Defendant did not answer the door at either address. (*Id.*) It was not until October 16, 2020, that Plaintiff successfully served Andrew Schroeder with a notice of non-renewal and notice of termination. (*Id.* ¶ 75.) Plaintiff ultimately took possession of the Condominium on December 28, 2020. (*Id.* ¶ 76.) At that time, Plaintiff discovered that the Condominium was left in poor condition. (*Id.* ¶¶ 76–77.) Among other things, there was water damage and the unit smelled of a foul odor. (*Id.* ¶¶ 78, 84.) In addition, the apartment was littered with trash, the floor was left with a sticky film and dog hair, urine, and feces. (*Id.* ¶¶ 79–81.) As a result of the damage, Plaintiff was required to hire professional cleaning and refurbishing services to restore the Condominium. (*Id.* ¶ 86–87.) In total, Andrew Schroeder

3

failed to pay $116,342.76 in rent for the Condominium and $4,500 in rent for the Office.  (*Id.* ¶ 3.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct.  *Id*.  While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

## DISCUSSION

### A. Breach of Contract[2]

To state a claim for breach of contract under New York law, the complaint must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. N.Y.*, 375 F.3d 168 (2d Cir. 2004).  It is axiomatic, therefore, that where a defendant is not a party to an agreement, he cannot be held liable for any breach thereof.[3]  Here,

---

[2] Plaintiff also alleges that the Schroeders owe attorney's fees pursuant to the lease, but they are not parties to the lease.  The Complaint also does not allege that the Schroeders agreed to assume the lease and would be subject the attorney's fees provision.  Accordingly, the Court denies Andrew Schroeder's request for attorney's fees.

[3] The exception for third-party beneficiaries is not applicable here.

4

the Schroeders urge the court to dismiss the complaint on the grounds that Plaintiff fails to allege any agreement between them and Plaintiff existed. (Defs.' Mem. Supp. Mot. Dismiss at 5–6 ("Defs.' Mem."), ECF No. 37.) The Court readily intends to do so.

According to the complaint, Plaintiff entered into a contract for the lease of the Office and Condominium with Andrew Schroeder. This allegation is repeated through the complaint. For example, at paragraph 35 Plaintiff alleges that "Schroeder agreed to abide by the terms of a written Standard Form of Condominium Apartment Lease ("the Lease [Agreement]") for the [Condominium] that he signed on or about August 1, 2019." (Am. Compl. ¶ 35.) At paragraph 54, Plaintiff alleges that on "June 1, 2019 Plaintiff agreed to rent the Office to [Andrew] Schroeder for nine hundred dollars ($900.00) per month." (*Id.* ¶ 54.) And, at paragraph 55, "on August 1, 2019, Plaintiff and [Andrew] Schroeder entered into the Lease Agreement by which [Andrew] Schroeder agreed to rent the [Condominium] from Plaintiff for four thousand five hundred dollars ($4,500.00) per month." (*Id.* ¶ 55.) Conspicuously absent from any of the 163 numbered paragraphs is any allegation that, at the time of the formation of the lease, the Schroeders made any promises to be bound by its terms. Indeed, such a notion is belied by the face of the Lease Agreement. That is, the preamble of the Lease Agreement sets out the parties to the agreement as Thomas Penichter and Andrew Schroeder. (Reich Decl. Ex H ("Lease Agreement") at 2, ECF No. 38-8.) Likewise, the signature page bears the signature of only Plaintiff and Andrew Schroeder. (*Id.* at 14.)

Notwithstanding the plain language of the Lease Agreement, which makes abundantly clear that its only parties are Plaintiff and Andrew Schroeder, Plaintiff insists through now two complaints, that the Schroeders should be held liable for the alleged breach by Andrew Schroeder. This is so, according to Plaintiff, because the Schroeders agreed to serve as

5

guarantors of the Lease Agreement on Andrew Schroeder's behalf. (Pl.'s Mem. Opp'n ("Pl.'s Opp'n") at 8, ECF No. 40.) Notably, the Lease Agreement includes a guaranty provision. (*See* Lease Agreement at 14–15.) However, that provision remained unsigned by anyone. (*Id.*) In other words, at the time the agreement was signed, the Schroeders plainly had not agreed to serve as guarantors. Perhaps cognizant of this glaring deficiency, Plaintiff advances a theory that sometime after the formation of the Lease Agreement and after Andrew Schroeder was at least four months in arrears, the Schroeders, through their agents, agreed to serve as guarantors. (Pl.'s Opp'n at 3.) This theory is as convoluted as its reads. Indeed, it is, in a word, hogwash.

*First*, to the extent that Plaintiff suggests that this purported subsequent agreement with the Schroeders amended or modified the initial Lease Agreement, that argument is directly undermined by Section 28 E of the Lease Agreement, which states "[t]his lease, or any provision hereof, may not be modified, amended, extended, waived or abrogated without the prior written consent of the Condominium." (Lease Agreement at 11.) Of course, there is no allegation that any such consent was ever obtained.

*Second*, to the extent Plaintiff maintains that the Schroeders entered into a separate agreement altogether, any such agreement cannot be deemed a valid contract. That is, "all contracts must be supported by consideration," without it, there is no contract. *See Beitner v. Becker*, 34 A.D.3d 406, 407–08 (N.Y. App. Div. 2006). Plaintiff fails to allege, what by way of consideration, the Schroeders were to receive in exchange for their alleged agreement to pay Andrew Schroeder's debt.

*Third*, as ably argued by Defendants, Plaintiff has failed woefully to allege any agency theory that might support liability here. According to Plaintiff, the representations contained in the email correspondence between Plaintiff, Williams, Perez, and Andrew Schroeder, create a

6

reasonable inference that Williams or Perez had actual or apparent authority to act as agents of the Schroeders. (Pl.'s Opp'n at 8.) To support Plaintiff's allegation of actual authority, Plaintiff argues that Thomas Schroeder's email correspondence authorized Williams to make rental payments on behalf of the Family Office. (*Id.* at 9.) However, under agency law, "[a]ctual authority is created by direct manifestations from the principal to the agent[.]" *See Highland Cap. Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010) (internal citation and quotation marks omitted). Accordingly, "such authority… exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." *See Dinaco, Inc. v. Time Warner, Inc.,* 346 F.3d 64, 68 (2d Cir. 2003). To put it differently, actual authority "depends on the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship." *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.,* 909 F.2d 698, 702 (2d Cir. 1990). The complaint is utterly devoid of any allegation concerning any act, transaction, or other conduct between Williams or Perez and the Schroeders, which might give rise to an inference that the Schroeders consented to Williams or Perez acting on their behalf. As Defendants correctly argue, "the mere fact that Plaintiff purportedly had an email exchange with a 'Michael Williams' does not give rise to such an inference." (Defs.' Mem. at 8.) Plaintiff's allegations are insufficient to create an inference of actual authority.

Plaintiff's theory of apparent authority is equally unavailing. "Apparent authority consists of two elements: (1) a manifestation by the principal that the agent has authority and (2) reasonable reliance on that manifestation by the person dealing with the agent." *In re Decor Holdings, Inc.*, No. 21-CV-6725 (GRB), 2023 WL 170595, at *5 (E.D.N.Y. Jan. 12, 2023) (quoting *In re Kollel Mateh Efraim, LLC*, 334 B.R. 554, 560 (Bankr. S.D.N.Y. Dec. 15, 2005)).

7

In other words, apparent authority requires that a purported principal, through the principal's conduct, causes a third party to believe that the purported agent was acting on behalf of the principal. Here, Plaintiff, fails to allege any conduct on the part of the Schroeders that might have caused Plaintiff to believe that Williams or Perez was acting on the Schroeders' behalf. In fact, Plaintiff fails to allege that the Schroeders engaged in any conduct at all. To the contrary, on the singular occasion on which Plaintiff sought to contact the Schroeders directly, Plaintiff alleges that Mr. Schroeder failed to respond. (Am. Compl. ¶ 72.) Plaintiff's agency theory cannot stand.

### B. Aiding and Abetting Fraud

"To establish liability for aiding and abetting fraud under New York law, the plaintiffs must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (internal citation and quotation marks omitted). "A failure to allege sufficient facts to support the inference that the alleged aider and abettor had actual knowledge of the fraudulent scheme warrants dismissal of the aiding and abetting claim at the pleading stage." *Id.* (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292–93 (2d Cir. 2006)). Federal Rule of Civil Procedure 9(b) imposes a heightened standard of pleading for allegations of fraud, requiring such claims to be "stated with particularity." Fed. R. Civ. P. 9(b).[4]

---

[4] Plaintiff's reliance on *William Doyle Galleries, Inc. v. Stettner* is misplaced. There, the Second Department reaffirmed that "knowledge need only be pleaded generally . . . particularly at the prediscovery stage, since a plaintiff lacks access to the very discovery materials which would illuminate a defendant's state of mind." 167 A.D.3d 501, 504 (N.Y. App. Div. 2018) (internal citation and quotation marks omitted). The Court found sufficient allegations that the alleged abettor was the source of the document containing misrepresentations, that the abettor had the means to verify the veracity of the representations, and that the abettor had a longstanding relationship with the fraudster. *Id.* Here, by contrast, the complaint does not permit the inference that the Schroeders were aware of Andrew Schroeder's activities.

Plaintiff's theory of liability against the Schroeders for aiding and abetting fraud is as anemic as his breach of contract theory. As it goes, Thomas and Beverly Schroeder aided and abetted Andrew Schroeder's fraud in the inducement. (Am. Compl. ¶ 142.) This is so, according to Plaintiff, because the Schroeders had actual knowledge of Andrew Schroeder's financial condition, inability to meet his contractual obligations, and contentious divorce. (*Id.* ¶¶ 138–39.) Plaintiff also alleges that the Schroeders had knowledge of Andrew Schroeder's arrears, and that Williams indicated that their "office" approved the payment. (*Id.* ¶¶ 140–41.)

Even assuming all of those facts are true, the Court is left to ask: So what? That the Schroeders may have been aware of their son's personal or financial conditions is not synonymous with their knowledge concerning any alleged misstatements made by Plaintiff. And, even if Plaintiff had pleaded that the Schroeders were aware of misstatements made by Andrew Schroeder, any failure to act does not constitute aiding and abetting fraud. That is, Plaintiff offers no legal basis that would require the Schroeders to cure Andrew Schroeder's misstatements. *See Ryan v. Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL 1375265, at *10 (E.D.N.Y. Sept. 20, 2000) ("[a]bsent a confidential or fiduciary relationship between the plaintiff and the aider and abettor, the inaction of the latter does not constitute substantial assistance warranting aider and abettor liability.")

Next, Plaintiff fails to plead just how the Schroeders provided substantial assistance to Andrew Schroeder. Plaintiff's allegations concerning the Schroeders are all based on purported actions of Andrew Schroeder, and to a lesser extent Williams, not the Schroeders. For example, at paragraph 63, Plaintiff alleges that Andrew Schroeder responded to Plaintiff's email indicating that someone from the Family Office would be in touch. (Am. Compl. ¶ 63.) At paragraph 62, Plaintiff alleges "Schroeder also promised that his parents . . . would pay[.]" (*Id.* ¶ 62.) At

9

paragraph 69, Plaintiff alleges Andrew Schroeder "again represented that the "Family" or "Home Office" would cover the unpaid rent." (*Id.* ¶ 69.) At paragraph 70, Plaintiff alleges, "[Andrew Schroeder] also claimed to have arranged an in-person meeting to be held in March 2020 between Thomas Schroeder and Plaintiff." (*Id.* ¶ 70.) Plaintiff fails to allege that the Schroeders undertook any specific action to aid and abet Andrew Schroeder. At worst, Plaintiff alleges that the Schroeders were aware of their son's personal circumstances. This, of course, speaks nothing about their knowledge of Andrew Schroeder's statements to Plaintiff that might have induced him to enter the Agreement.

Finally, Plaintiff's theory of liability cannot be squared with the timeline of the alleged events. Remember, this is a fraudulent inducement claim. Therefore, any alleged assistance necessarily had to occur either before or at the time of Plaintiff executed the contract. Yet, every allegation regarding the Schroeders, as lacking as they may be, postdates the contract. Plaintiff's claim against the Schroeders for aiding and abetting fraud is dismissed.

## CONCLUSION

For the foregoing reasons, the motion to dismiss claims against Defendants Thomas Schroeder and Beverly Schroeder is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
      December 11, 2023

/s/ LDH
L<small>A</small>SHANN D<small>E</small>ARCY HALL
United States District Judge